SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK: Part 55
----------------------------------------------------------------x
MICHAEL J. KATZ, M.D. and MICHAEL J. KATZ
MD PC,

                                Plaintiffs,

Index No. 153581/2014
Amended
**DECISION/ORDER**

        -against-

LESTER SCHWAB KATZ & DWYER, LLP, PAUL L.
KASSIRER, THE TURKEWITZ LAW FIRM, ERIC
TURKEWTIZ, SAMSON FREUNDLICH, JOHN DOE
NO. 1 through JOHN DOE NO. 10 and ABC CORP.
NO. 1 through ABC CORP. NO. 10,

                                Defendants.
----------------------------------------------------------------x
**HON. CYNTHIA S. KERN, J.S.C.**

Recitation, as required by CPLR 2219(a), of the papers considered in the review of this motion for :_____

| Papers | Numbered |
|---|---|
| Notice of Motion and Affidavits Annexed................................... | 1 |
| Affirmations in Opposition....................................................... | 2 |
| Replying Affidavits................................................................... | 3 |
| Exhibits.................................................................................... | 4 |

The following is the amended decision and order of the court:

      Plaintiffs commenced the instant action asserting claims for defamation, injurious falsehood, tortious interference and prima facie tort. Defendants The Turkewitz Law Firm ("TLF") and Eric Turkewitz ("Turkewitz") (collectively referred to herein as the "Turkewitz Defendants") now move for an order pursuant to CPLR § 3211(a)(1) and (7) dismissing plaintiffs' complaint and for an order pursuant to CPLR § 8303-a and 22 NYCRR 130.1

sanctioning plaintiffs for filing a frivolous action and improperly requesting specified compensatory damages in their *ad damnum* clause. Defendant Samson Freundlich ("Freundlich") cross-moves for the same relief. Additionally, by separate notice of motion, defendants Lester Schwab Katz & Dwyer, LLP ("LSKD") and Paul L. Kassirer ("Kassirer") (collectively referred to herein as the "LKSD Defendants") also move for an order pursuant to CPLR § 3211(a)(1) and (7) dismissing all claims asserted against them. For the reasons set forth below, the motions to dismiss are granted but the portion of Turkewitz Defendants and Freundlich's motions seeking sanctions is denied.

The relevant facts are as follows. This defamation action arises out of trial testimony given by plaintiff Michael J. Katz, M.D. ("Dr. Katz") as a medical expert in a judicial proceeding before Justice Duane Hart in Supreme Court, Queens County. Specifically, on April 12, 2013, Dr. Katz, an orthopedic surgeon, was called as a defense witness at the underlying jury trial of *Bermejo v. Amsterdam & 76th Associates*, Index No. 23985/2009 (the "*Bermejo* Action"). During his testimony, Dr. Katz testified that he had conducted two Independent Medical Exams ("IMEs") of the plaintiff. After testifying that the first IME took approximately 45 minutes, Dr. Katz testified that he could not recall how long the second IME took but that normally his IMEs lasted between 10 and 20 minutes. After providing this testimony, plaintiff's counsel presented the court with a surreptitiously made video of the second IME, which had not been previously disclosed during discovery. The video purported to show that, in fact, the second IME had lasted only a minute and 56 seconds. At this point, Justice Hart immediately dismissed the jury and directed the parties' attorneys to appear before him the following Monday, April 15, 2013, prepared to argue why he should not call a mistrial.

During subsequent proceedings held over the course of four days, Justice Hart proceeded to repeatedly accuse Dr. Katz both on and off the record of lying and of perjury in regards to his testimony about the second IME. Indeed, Justice Hart made a long series of eviscerating and critical comments about Dr. Katz, calling him a liar on numerous occasions, recommending that he retire from the medical profession as his career "doing IME's is over," and threatening to refer the matter to the District Attorney, The Office of Professional Medical Conduct and to the Administrative Justice on several occasions, which is all chronicled in plaintiffs' complaint. Indeed, according to plaintiffs' complaint, during just one day of hearings, Justice Hart called Dr. Katz a liar more than 25 times. Specifically, the interaction between Justice Hart and Dr. Katz over four days of hearings is summarized as follows.

On April 15, 2013, the parties in the *Bermejo* Action appeared in front of Justice Hart and Justice Hart proceeded to inform Dr. Katz that:

> I would strongly suggest you do not do anything because you're in more trouble than you think. It's probably [sic] that your career doing IME's is over. It's possible, unless this case is settled, that I might be taking more–the attorneys have a duty basically not to do anything with regards to the district attorney. If I find out or if I even suspect something is going on I have a duty to get in touch with the district attorney and getting in touch with the district attorney is not a good thing for you in this case. Understood.

Thereafter, upon the arrival of Dr. Katz's attorney, plaintiffs allege that Justice Hart announced, in open court, but off-the record, "Your client is a liar and a thief," and continued to berate Dr. Katz off the record in the presence of his attorney. When they went back on the record, Justice Hart instructed the parties as follows:

> I'm going to second call this while you figure out how you can settle this case so I can seal this record so that I don't have to send things over to the district attorney, so that I don't have to remove counsel from this case, so that defendant isn't put in a position where they have to go forward on the RSD case with no orthopedist and so the

-3-

disclaiming carrier for the third-party defendant isn't caught holding a three to six million dollar bag. All of those occurring not without the realm of happening, correct. They can all happen in this case. Parties can be sanctioned, people can go to jail. Am I making it up? No. . . .

So you got until really about 4:00 o'clock [sic] this afternoon to try and settle this because if I have to deal with this case tomorrow stuff will start happening . . .

The next day, on April 16, 2013, the parties again appeared before Justice Hart. According to plaintiffs complaint, Justice Hart again "continued to exert a great deal of pressure upon Dr. Katz to provide a personal contribution to settle the Bermejo case, stating that if the matter was settled, he would seal the record." Additionally, Justice Hart recommended that "[Dr. Katz] reassess his future testimony at any trials until this issue and a few others are resolved."

On July 1, 2013, the parties again appeared in front of Justice Hart. At this point, Justice Hart had reviewed the video himself and continued to speak openly about his feelings regarding his perceived conflict regarding Dr. Katz's testimony about the second IME and what the video actually revealed. Specifically, Justice Hart remarked as follows:

The worst thing is that we have a doctor who clearly lied about the length of time he took to do an IME, clearly. No matter how you slice it, 10, 15, 20 minutes. It turns out he took 1 minute and 56 seconds . . .

He testified to findings that he obviously could not have had in a minute and 56 seconds. But if he did 10, 20 IME he could have had. And he could have done it, but he didn't do the test . . .

We are wasting our time trying cases over and over and over again because a doctor who is making millions of dollars doing IME's decides that he is going to lie.

Justice Hart went on further to remark about his ability to punish Dr. Katz by stating:

I can only sanction a party or the attorneys. Since I can't sanction Dr. Katz for lying and let the record reflect, I am withdrawing my sealing of any prior record in this case. Dr. Katz lied. I am finding that he lied. He clearly, his clear unequivocal testimony that his IME took 10, 20 minutes . . .

-4-

> I can blame the attorneys and the carrier who hired him to do an IME on this case because they should have known what this guy was doing. They should have known. And again the man is literally making millions of dollars doing IME's. Now he gets caught lying. There is no other way to put it. He lied. There is no other way to make it nice. He said the IME took between 10 to 20 minutes. It took a minute and 56 seconds . . .
>
> So, I will and you can do whatever you want to appeal this record. Mr. Mendelsohn [defendant's attorney], I am sanctioning your law firm $10,000. You can appeal this. But clearly, for this reason, I can't sanction Dr. Katz. You can appeal this. I want you to appeal it. I want the Appellate Division to make a finding that I am right or wrong, but there is no doubt about the finding that Dr. Katz lied. I want you to appeal that finding so that every lawyer in the state that looks at the Law Journal and looks at the record will be able to see what went on during this trial . . .

Additionally, according to plaintiffs' complaint, Justice Hart went even further by instructing defendants' attorneys off the record that, "[You] should almost sue Dr. Katz for causing this problem." During this time, Justice Hart also suggested that he would perhaps order a civil contempt hearing against Dr. Katz. Specifically, Justice Hart stated as follows:

> I would like to sanction Dr. Katz. I would like to put Dr. Katz out of business of doing IME's period. But I can't do that in this type of proceeding. I can order an eventual [contempt hearing] when they are before me, a civil contempt hearing to be done by another Judge. I am not going to do it. I will discuss with the powers that be in this building a civil contempt hearing with regards to Dr. Katz. That is Michael Katz, an orthopedist.

Later that afternoon, in addressing Dr. Katz's attorney directly Justice Hart stated as follows:

> Again, I will refer this, unless I don't think Dr. Katz, you know, we have enough problems doing trials. It is a strain on the system, but unless I get some sort of representation from you [Dr. Katz's attorney,] on behalf of Dr. Katz that he is out of the medical/legal business, I am going to refer this to the Administrative Judge and the District Attorney of Queens [C]ounty [sic] so they can do whatever they want to do. Perjury is a D felony. . . .
>
> I would strongly suggest that you talk to Dr. Katz. As it is, and I can say this because it has already been said on the record. He will not be doing business with Travelers or AIG anymore. I have a feeling that any attorney or adjuster within earshot or who reads this transcript will not be dealing with Dr. Katz much anymore. It might be an easy way for him to bow out gracefully from harm's way. I would imagine that this number is not

going to be called too much in the foreseeable future. It might be a nice way out. . . .

Thereafter, a recess was called. Upon returning from recess, Justice Hart went on to state:

> Let the record reflect that I gave Dr. Katz the option of and I would institute a special proceeding to retire from the medical/legal business. Retire at the time and he has declined. What I am now going to do, I am going to order a full transcript of everything, the trial and the subsequent proceedings. I will present that to both the administrative judge of Queens County and the District Attorney. I would recommend to the District Attorney that they explore prosecuting Dr. Katz for perjury.

Additionally, plaintiffs allege that "Justice Hart stated that he would handwrite a complaint; that he would additionally serve as judge during the proceeding; that the purpose of the proceeding would be to determine whether Dr. Katz committed perjury; and that the penalty imposed would be the revocation of Dr. Katz's license to practice medicine." Justice Hart also went on to state:

> I am making it very clear on the record, the insurance companies here are not going to go near him. I unsealed the record. Everybody from now on when he testifies as to the tests that he performed, it is always going to be questioned from now on. After about a month or two, nobody is going to go near him anyway. So he is not giving up much. What he is giving up is me referring it to the District Attorney and to the Administrative Judge.

On July 8, 2013, the parties were again ordered to appear before Justice Hart. At this time, Justice Hart continued to make the same remarks that Dr. Katz "lied" and concluded by stating:

> Maybe I will have the contempt hearing here. He is denying that he lied. He should be happy to get away with me just saying that he lied. Let it go at that. Yes, we will have a finding forever more that a Justice for the Supreme Court of the State of New York said that he lied because he did it. I would suggest you let it go at that.

According to plaintiffs' complaint, despite Justice Hart's numerous threats, no further action was taken against Dr. Katz.

Subsequent to the proceedings, a series of blog posts and an email were written concerning the proceedings, which are the focus of the present action. Specifically, plaintiffs

have brought the present action against the Turkewitz Defendants and Freundlich for the posts that appeared on Turkewitz's blog, *www.newyorkpersonalinjuryattorneyblog.com*, between July 8, 2013 and January 6, 2014. Additionally, plaintiffs have brought the present action against the LKSD defendants based on an email written by Kassirer, an attorney who practices in insurance-side defense work, which was allegedly sent to "key members of the insurance defense industry" and contained a link to one of Turkewitz and Freundlich's posts.

On a motion addressed to the sufficiency of the complaint, the facts pleaded are assumed to be true and accorded every favorable inference. *Morone v. Morone*, 50 N.Y.2d 481 (1980). "[A] complaint should not be dismissed on a pleading motion so long as, when plaintiff's allegations are given the benefit of every possible inference, a cause of action exists." *Rosen v. Raum*, 164 A.D.2d 809 (1st Dept 1990). However, "'[i]n those circumstances where the legal conclusions and factual allegations are flatly contradicted by documentary evidence they are not presumed to be true or accorded every favorable inference.'" *Morgenthow & Latham v. Bank of New York Company, Inc.*, 305 A.D.2d 74, 78 (1st Dept 2003) *(quoting Biondi v. Beekman Hilll House Apt. Corp.*, 257 A.D.2d 76, 81 (1st Dept 1999), *aff'd*, N.Y.2d 659 (2000)). In such cases, "the criterion becomes whether the proponent has a cause of action, not whether he has stated one." *Id.* (internal quotations removed).

In the present case, plaintiffs' complaint fails to state a cause of action for defamation as all of the alleged defamatory statements are either privileged or nonactionable assertions of opinion. As an initial matter, the majority of the alleged defamatory statements identified in plaintiffs' complaint are privileged under Section 74 of the Civil Rights Law. Section 74 of the Civil Rights Law provides, in relevant part, that "[a] civil action cannot be maintained against

any person, firm or corporation, for the publication of a fair and true report of any judicial proceeding." "For a report to be characterized as 'fair and true' within the meaning of the statute, thus immunizing its publisher from a civil suit sounding in libel, it is enough that the substance of the article be substantially accurate." *Holy Spirit Assn. For Unification of World Christianity v. New York Times Co.*, 49 N.Y.2d 63, 67 (1979) (citing *Briarcliff Lodge Hotel v. Citizen-Sentinel Publishers*, 260 N.Y. 106, 118 (1932) ("[A] fair and true report admits of some liberality; the exact words of every proceeding need not be given if the substance be substantially stated."). Indeed, "[w]hen determining whether an article constitutes a 'fair and true' report, the language used therein should not be dissected and analyzed with a lexicographer's precision." *Id.* at 68. However, "[i]f the published account, along with the rest of the article, suggests more serious conduct than that actually suggested in the official proceeding, then the privilege does not attach, as a matter of law." *Daniel Goldreyer, Ltd. v. Van de Wetering*, 217 A.D.2d 434, 436 (1st Dept 1995) (internal citations omitted).

Here, Turkewitz and Freundlich's statements pertaining to the *Bermejo* Action are privileged under Section 74 as they are fair and true reports of Justice Hart's findings and assertions made during the course of the proceedings. Simply stated, during the course of the proceedings Justice Hart made numerous disparaging remakes regarding Dr. Katz and Turkewitz and Freundlich's statements are nothing more than a fair report of these statements. Indeed, a side by side comparison of the posts, specifically the statements identified by plaintiffs in their complaint, with the proceeding's transcripts, as summarized above, clearly reveal that Turkewitz and Freundlich's reports of the proceedings accurately reflect Justice Hart's statements. For example, Turkewitz and Freundlich's statements that Dr. Katz "offered testimony at trial that was

-8-

completely inconsistent with the actual events" and "was busted for lying on the witness stand" accurately reflect Justice Hart's repeated finding on the record that "Dr. Katz lied." Indeed, Justice Hart explicitly stated "[t]here is no other way to put it. He lied. There is no other way to make it nice. He said the IME took between 10 to 20 minutes. It took a minute and 56 seconds." Similarly, Turkewitz and Freundlich's statements pertaining to Justice Hart's referral of the matter to other authorities for "further inquiry, investigation and appropriate action" fairly characterize the numerous threats Justice Hart made during the course of the proceedings. In fact, Justice Hart explicitly stated that he was "going to order a full transcript of everything, the trial and the subsequent proceedings [and] present that to both the administrative judge of Queens and the District Attorney." To the extent plaintiffs contend that the statements are not a fair and true report as Justice Hart never actually referred the matter to any other authorities, such contention is without merit. The proper inquiry is not whether the statements reflect a fair and true report of what occurred after the proceedings but if they are a fair and true report of what occurred during the course of the proceedings. Thus, it is sufficient for the purposes of the instant analysis that such action was threatened during the course of the proceedings. Additionally, the court finds no merit to plaintiffs' assertion that the statements suggest more serious conduct than what occurred during the proceedings.

Additionally, the remaining allegedly defamatory statements as identified in plaintiffs' complaint are nonactionable as they are constitutionally protected assertions of opinion. It is well settled that "'[s]ince falsity is a *sine qua non* of a libel claim and since only assertions of fact are capable of being proven false . . . a libel action cannot be maintained unless it is premised on published assertions of fact,' rather than on assertions of opinion." *Sandals Resort*

*Intl. Ltd. v. Google, Inc.*, 86 A.D.3d 32, 38 (1st Dept 2011) (quoting *Brian v. Richardson*, 87 N.Y.2d 46, 51 (1995)). In New York, the operative standard for distinguishing protected expressions of opinion from actionable assertions of fact is as follows:

> A 'pure opinion' is a statement of opinion which is accompanied by a recitation of the facts upon which it is based. An opinion not accompanied by such a factual recitation may, nevertheless, be 'pure opinion' if it does not imply that it is based upon undisclosed facts. When, however, the statement of opinion implies that it is based upon facts which justify the opinion but are unknown to those reading or hearing it, it is a 'mixed opinion' and is actionable. The actionable element of a 'mixed opinion' is not the false opinion itself–it is the implication that the speaker knows certain facts, unknown to his audience, which support his opinion and are detrimental to the person about whom he is speaking.

*Steinhilber v. Alphonse*, 68 N.Y.2d 235, 252 (1991). Thus, in determining whether a particular communication is actionable, the court must distinguish "between a statement of opinion that implies a basis in facts which are not disclosed to the reader or listener . . . and a statement of opinion that is accompanied by a recitation of the facts on which it is based or one that does not imply the existence of undisclosed underlying facts." *Gross v. New York Times*, 82 N.Y.2d 146, 154 (1993) (internal citations omitted). "The former are actionable not because they convey 'false opinions' but rather because a reasonable listener or reader would infer that the 'the speaker [or writer] knows certain facts, unknown to [the] audience, which support [the] opinion and are detrimental to the person [toward] whom [the communication is directed]." *Id.* at 153-154 (quoting *Steinhilber*, 68 N.Y.2d at 290). "In contrast, the latter are not actionable because . . . a proffered hypothesis that is offered after a full recitation of the facts on which it is based is readily understood by the audience as conjecture." *Id.* at 154.

Additionally, in determining whether the statements are assertions of opinion as opposed to fact, the court must consider the content and context of the communication as a whole.

"[E]ven apparent statements of fact may assume the character of statements of opinion, and thus be privileged, when made in public debate, heated labor dispute, or other circumstances in which an audience may anticipate [the use] of epithets, fiery rhetoric or hyperbole." *Sandals*, 86 A.D.3d at 41-42 (citing *Steinhilber*, 68 N.Y.2d at 294). Thus, "[s]ifting through a communication for the purpose of isolating and identifying assertions of fact should not be the central inquiry." *Id.* "Rather, it is necessary to consider the writing as a whole as well as the 'over-all context' of the publication to determine 'whether the reasonable reader would have believed that the challenged statements were conveying facts about the libel plaintiff.'" *Id.* at 42 (quoting *Brian*, 87 N.Y.2d at 51). Specifically, it is "imperative that courts learn to view libel allegations within the unique context of the Internet." *Id.* at 43 (quoting O'Brien, Note, *Putting a Face to a [Screen] Name: The First Amendment Implications of Compelling ISPs to Reveal the Identities of Anonymous Internet Speakers in Online Defamation Cases*, 70 Fordham L Rev. 2745, 2774-2775 (2002)). As the First Department noted, "[i]n determining whether a plaintiff's complaint includes a published 'false and defamatory statement concerning another,' commentators have argued that the defamatory import of the communication must be viewed in light of the fact that [internet blogs] 'are often the repository of a wide range of casual, emotive, and imprecise speech,' and that the online 'recipients of [offensive] statements do not necessarily attribute the same level of credence to the statements [that] they would accord to statements made in other contexts.'" *Id.* at 43-44.

Applying the above principles to the present case, it is clear that the remaining statements contained in Turkewtiz and Freundlich's posts falling outside the fair reporting privilege and Kassirer's email are nonactionable assertions of opinion. As an initial matter, all statements

made in Turkewitz and Freundlich's posts are followed by a recitation of the facts upon which they are based. For example, all statements regarding any potential legal fallout from the Bermejo Action are stated in the context of posts describing the Bermejo Action generally and it is clear that such statements are expressions of what might transpire as a result of Justice Hart's findings that Dr. Katz lied while giving trial testimony as an expert witness. Thus, a reader would understand that statements such as "there appears no realistic way that [Dr. Katz] could testify without perjuring himself," and that "litigation could easily follow in matter where judges and juries had previously relied upon Dr. Katz's reports and testimony" are in the nature of conjecture and are not portraying statements of fact about Dr. Katz. Similarly, all statements regarding the length of Dr. Katz's IMEs generally, compared to what he testified, are made after Turkewitz directly cites to the websites he obtained the data he bases his conclusions on. Thus, Turkewitz's assertion that "[Dr. Katz's] usual exam is likely under five minutes, which is also contrary to what he testified" must be seen as an assertion of opinion. Moreover, a finding that these statements constitute nonacitonable opinion is further supported by the fact that these statements appear on Turkewitz's personal blog as opposed to a physical official publication.

Further, the court finds that Kassirer's email also constitutes nonactionable opinion. Initially, the context of the communication clearly signals the reader that Kassirer was expressing an opinion rather than a fact about Dr. Katz. The email was written by an attorney who represents insurance companies to others in the insurance field. Thus, the reader would clearly understand that Kassirer's email meant to express his opinion and was not conveying facts about Dr. Katz. Indeed, a review of the email clearly demonstrates its nature as opinion. Kassirer directly supports his assertions made in the email by reference to Turkewitz and Freundlich's

July 8, 2013 post. In fact, Kassirer explicitly states "Please see the link below re: Orthopedist, DR. MICHAEL KATZ. Needless to say, we do not use Dr. Katz's services, but many carriers and firms do, and what transpired in this case makes him absolutely useless as an examining 'expert'." Thus, Kassirer connects his statements to the facts upon which they are based and does not infer that they are based on any undisclosed facts. Given this context, the statements contained in Kassirer's email constitute nonactionable assertions of opinion as a matter of law. Additionally, as this court has already determined that Turkewitz and Freundlich's July 8, 2013 post is nonactionable, plaintiffs cannot maintain a claim for defamation against Kassirer for attaching said post to his article.

The court now turns to the remainder of defendants' motion seeking to dismiss plaintiff's remaining causes of action. As an initial matter, defendants' motions for an order pursuant to CPLR § 3211(a)(7) dismissing plaintiffs' injurious falsehood claim are granted. "The tort of trade libel or injurious falsehood requires the knowing publication of false and derogatory facts about the plaintiff's business of a kind calculated to prevent others from dealing with the plaintiff, to its demonstrable detriment. In addition, the facts so published must cause special damages, in the form of actual lost dealings." *Banco Popular N. Am. v. Lieberman*, 75 A.D.3d 460, 462 (1st Dept 2010). Here, plaintiffs' complaint fails to adequately state a claim for injurious falsehood against defendants as this court has already found that the alleged defamatory statements contained in plaintiffs' complaint are either fair and true reports of judicial proceedings, which are afforded absolute privilege in suit pursuant to Civil Rights Law § 74, or are constitutionally protected statements of opinion.

Additionally, defendants' motions for an order pursuant to CPLR § 3211(a)(7) dismissing

plaintiffs' cause of action for tortious interference with contract is granted. To state a claim for tortious interference with contract, a plaintiff must allege: (1) the existence of a valid contract between plaintiff and a third party; (2) defendant's knowledge of that contract; (3) defendants' intentional procurement of the third-party's breach of the contract without justification; (4) actual breach of the contract; and (5) damages resulting therefrom. *Lama Holding Company v. Smith Barney*, 88 N.Y.2d 413, 424 (1996). "Although on a motion to dismiss the allegations in a complaint should be construed liberally, to avoid dismissal of a tortious interference with contract claim a plaintiff must support his claim with more than mere speculation." *Burrowes v. Combs*, 25 A.D.3d 370, 373 (1st Dept 2006).

In the present case, plaintiffs complaint fails to state a cause of action for tortious interference with contract against defendants as plaintiffs fail to allege an actual breach of a contract. Plaintiffs' complaint contains only the allegation that: "Upon information and belief, several insurance carriers and third party independent medical companies terminated and/or suspended their contractual relationships with Plaintiffs." This allegation is insufficient to plead an actual breach of a contract as neither a "termination and/or suspension" of a contract means that the contract was breached as a matter of law. Further, even assuming the termination and/or suspension of the alleged contracts was a breach of an alleged contract, as the allegation is based "upon information and belief" it is entirely speculative, which is insufficient to sufficiently plead a claim for tortious interference with contract.

Additionally, defendants' motions for an order pursuant to CPLR§ 3211(a)(7) dismissing plaintiffs' claims for tortious interference with business relations and prima facie tort is granted. Both of these claims require a showing that the alleged wrongful conduct was done without

justification. Specifically, "[t]o state a cause of action for tortious interference with prospective business advantage, it must be alleged that the conduct by defendant that allegedly interfered with plaintiff's prospects either was undertaken for the sole purpose of harming plaintiff or that such conduct was wrongful or improper independent of the interference allegedly caused thereby." *Jacobs v. Continuum Health Partners*, 7 A.D.3d 312, 313 (1st Dept 2004). Similarly, "there is no recovery in prima facie tort unless malevolence is the sole motive for defendant's otherwise lawful act." *Burns Jackson Miller Summit & Spritzer v. Lidner*, 59 N.Y.2d 314, 333 (1983). Here, even affording plaintiffs' allegations every favorable inference, plaintiffs fail to adequately plead this crucial element. In fact, plaintiffs allegation that "Turkewitz's blog is primarily intended to generate business and attract potential clients to the Turkewitz Law firm" directly contradicts their conclusory allegation that Turkewitz and Freundlich published the posts "solely out of malice." Similarly, plaintiffs conclusory allegations regarding Kassirer's motives for writing the email are directly contradicted by the email itself. On its face, it is clear that Kassirer's sole motive for writing the email was not to harm plaintiffs. The email is not directed at disparaging Dr. Katz and his practice. Instead, the email is directed at informing others in the insurance industry about the potential consequences of Justice Hart's findings in the *Bermejo* Action. Accordingly, plaintiffs claims for tortious interference with prospective business advantage and prima facie tort must be dismissed for failure to state a cause of action.

Finally, that remaining portion of the Turkewitz Defendants and Freundlich's motion for an Order pursuant to CPLR § 8303-a and 22 NYCRR 130-1.1 awarding defendants costs, fees and sanctions against plaintiffs is denied as there is no basis for such relief.

Accordingly, based on the foregoing, defendants' respective motions to dismiss plaintiff's

complaint are granted. However, the portion of the Turkewitz Defendants and Freundlich's motions seeking sanctions and costs are denied. This constitutes the decision and order of the court. The clerk is directed to enter judgment accordingly.

Dated: 4/17/15

_____

J.S.C.

CYNTHIA S. KERN
J.S.C.