

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------X
MICHAEL J. KATZ, M.D., MICHAEL J. KATZ, M.D.,
P.C.,

                               Plaintiffs,

                  -against-

TRAVELERS *its relevant servants, agents or employees
and relevant associated, affiliated or subsidiary
corporations a/k/a* Travelers Insurance Company *a/k/a*
The Travelers Companies, Inc., EXAM WORKS, INC.
*and its relevant servants, agents or employees and
relevant associated, affiliated or subsidiary
corporations*,

                               Defendants.
----------------------------------------------------------X

**MEMORANDUM OF
DECISION & ORDER**
16-cv-4389 (ADS) (SIL)

**APPEARANCES:**

**Zisholtz & Zisholtz, LLP**
*Attorneys for the Plaintiffs*
170 Old Country Road
Suite 300
Mineola, NY 11501
        By:    Gerald Zisholtz, Esq.,
               Stuart S. Zisholtz, Esq.,
               Meng Cheng, Esq., Of Counsel

**DLA Piper LLP**
*Attorneys for the Defendant Travelers*
1251 Avenue of The Americas
27th Floor
New York, NY 10020
        By:    Brett Ingerman, Esq.,
               Colleen Michelle Gulliver, Esq., Of Counsel

**White & Williams LLP**
*Attorneys for the Defendant Exam Works, Inc.*
7 Times Square
Suite 2900
New York, NY 10036
        By:    Andrew I. Hamelsky, Esq.,
               Jenifer Ann Scarcella, Esq., Of Counsel

1

**SPATT, District Judge:**

This diversity action was originally brought by the Plaintiffs Michael J. Katz, M.D. and Michael J. Katz, M.D., P.C. (the "Plaintiffs" or "Dr. Katz") against the Defendants Travelers ("Travelers") and Exam Works, Inc. ("Exam Works") (collectively, the "Defendants") in New York State Supreme Court, Nassau County, alleging various contract and tort claims under New York State common law. Travelers removed the case to the United States District Court for the Eastern District of New York (the "EDNY") based on the diversity jurisdiction of the Court pursuant to 28 U.S.C. § 1332(a)(1).

Presently before the Court are motions from the Defendants, brought pursuant to Federal Rule of Civil Procedure ("FED. R. CIV. P." or "Rule") 12(b)(6), to dismiss the Plaintiffs' complaint for failure to state a claim. For the following reasons, Exam Works' motion is granted in its entirety, and Travelers motion is granted in part and denied in part.

## I. BACKGROUND

### A. Factual Background

The following facts are drawn from the Plaintiff's complaint unless otherwise noted, and, for the purposes of the instant motion, are accepted as true.

Dr. Katz is a medical doctor licensed to practice medicine in New York State, and is a resident of Nassau County. Michael J. Katz, M.D., P.C. is a professional corporation. Travelers is a corporation with its principal place of business in Connecticut, (Travelers' Notice of Removal at 2), that issues insurance policies. Exam Works is a corporation with a principal place of business in Georgia, (Id.), that is "in the business of providing physicians or names of physicians to conduct independent medical examinations (IME) in connection with claims for personal injury that were instituted against clients and customers of Travelers and other insurance companies." (Complaint

2

at ¶ 7). Exam Works allegedly keeps two lists of physicians: one of eligible physicians and another list called "Do Not Use." For more than 20 years, Dr. Katz was on Exam Works' eligible list and Dr. Katz conducted IMEs for Travelers, and other insurance companies.

This action stems from proceedings that occurred during a trial in New York State Supreme Court, Queens County in July 2013. The case, *Bermejo v. Amsterdam & 76th Associates, LLC, et.al.,* Index No. 23985/2009, was tried before the late Justice Duane Hart ("Justice Hart"). Travelers insured one of the Defendants in that case, Ibex Construction, and engaged Dr. Katz through Exam Works to conduct an IME of the Plaintiff in *Bermejo.* Dr. Katz conducted two IMEs—the first allegedly lasted 45 minutes, and the length of time of the second was a matter of great dispute at the trial.

At the trial in Supreme Court, on direct examination, Dr. Katz testified that he performed seven tests during the second IME. On cross examination, Patrick Hackett ("Hackett"), the counsel for Bermejo asked Dr. Katz how long it took him to conduct the second IME. Dr. Katz replied several times, and in different ways, that he did not know how long the second IME lasted. Justice Hart told Dr. Katz that he could not "accept an [answer of] 'I don't know.' You have been doing this for a while (sic). I will have to insist on what your custom and practice would be as to what type of, the length of exam of this type." (*Id.* at ¶ 55). Dr. Katz stated that he thought "a range of between 10 and 20 minutes would be appropriate." (*Id.*).

After Dr. Katz testified, Hackett called a paralegal from his office, Yury Ramirez ("Ramirez"), who testified that Dr. Katz' evaluation of Bermejo lasted five minutes and his exam only lasted three minutes. On re-direct examination of Bermejo, Hackett brought the existence of a video of the second IME to the court and counsel's attention. The jury was dismissed for the day.

3

Justice Hart reviewed the video and adopted Hackett's interpretation that the video showed that Dr. Katz's examination lasted only one minute and fifty-six seconds. The Plaintiffs maintain that the video did not show the entire physical examination, and that Dr. Katz's review of Bermejo's medical records was part of the IME.

Justice Hart directed Dr. Katz to reappear in his part with counsel. During an extended colloquy wherein Justice Hart entertained motions for a mistrial, he encouraged the parties to settle, and said that Dr. Katz should contribute to the settlement. This was done off the record. Even though Dr. Katz was not a party to the suit, Justice Hart said that Dr. Katz lied; and that his career doing IME work was over. On the record, Justice Hart said that he would unseal the record so that other attorneys, insurance companies, the New York State Health Department, Dr. Katz' insurance carrier and the public could see what happened; and that he would send the transcript to the Queens County District Attorney to pursue perjury charges.

Justice Hart repeatedly said on the record that Dr. Katz lied under oath. He said that Dr. Katz lied about the amount of time spent on the IME, and later said that the lie was actually that he did not perform or could not have possibly performed the tests that he said he performed during the second IME. Justice Hart further stated that he was going to sanction the attorneys who retained Dr. Katz $10,000 because he could not sanction Dr. Katz. He did eventually sanction them, but quickly changed his mind and vacated the sanctions. Justice Hart also contemplated holding a contempt hearing against Dr. Katz, but did not do so. Justice Hart called Dr. Katz a liar no less than 25 times on the record. He encouraged the attorneys who retained Dr. Katz to sue him for causing what was eventually declared a mistrial.

When Dr. Katz stated that he would not contribute to a settlement of the Bermejo case, Justice Hart encouraged him to instead retire, and said that he would hold a "special proceeding"

4

to "determine whether Dr. Katz committed perjury; and that the penalty imposed would be the revocation of Dr. Katz's license to practice medicine." (*Id.* at ¶ 116).

Although Justice Hart never commenced such a special proceeding, he repeatedly said that Dr. Katz lied; that he committed perjury; and said that no insurance company would go near him after reading the transcript of the *Bermejo* proceedings. Justice Hart told Dr. Katz and his counsel that Bermejo's attorneys had all agreed with the court's view that Dr. Katz lied, but the record showed that they did not agree—it showed that they did not object to the court's findings. Dr. Katz said that he would not testify further in the proceedings, and Justice Hart would not allow Ibex Construction or Travelers to retain another medical expert for another IME. Justice Hart declared a mistrial.

The Bermejo parties appealed various aspects of Justice Hart's ruling to the New York State Supreme Court Appellate Division, Second Department (the "Second Department"). The Plaintiffs attached to their complaint a copy of the Second Department's November 18, 2015 decision. The Plaintiffs state that the Second Department "totally exonerated" Dr. Katz. (Id. at ¶ 148). The Second Department stated that:

> we dispel the premise that underlies the plaintiff's arguments on these appeals, and the actions taken by the Supreme Court after declaring the mistrial, namely, the notion that Dr. Katz lied. The record does not reflect that Dr. Katz committed perjury. Dr. Katz was asked how long the second IME took, and his answer was that he did not know. There is no evidence in this record that, at the time Dr. Katz gave that testimony, he actually did know how long the second IME took. Thus, that answer (or series of answers) has not been shown to be untruthful. When Dr. Katz was then asked, by the court, "what [his] custom and practice would be" as to the length of an examination of this type, as noted, Dr. Katz's answer was that he thought that "in the range of between 10 and 20 minutes would be appropriate." There is no support in this record for the proposition that this answer was false. Moreover, even aside from the fact that the Supreme Court did not actually ask Dr. Katz about the length of the particular IME in question, it was improper to force him to specify an exact duration when his answer repeatedly was "I don't know." Accordingly, the record does not reflect a lie that would support a declaration of perjury by the Supreme Court. The plaintiff's attorneys insist that Mr. Hackett's

5

video recording shows that the examination lasted one minute and 56 seconds. However, the recording is approximately five minutes in length, and it cannot be determined, from a viewing of the recording, whether the recording captured the entire examination. In other words, it cannot be determined what happened before Mr. Hackett turned his recording device on, and what happened after he turned it off. Moreover, the recording does not account for the time Dr. Katz spent reviewing the plaintiffs fairly extensive medical records, which could arguably be considered part of the IME.

*Bermejo v. N.Y.C. Health and Hosp. Corp.*, 135 A.D.3d 116, 148 (N.Y. App. Div. 2015) (annexed to Plaintiff's complaint as Ex. A). The Second Department found that Justice Hart had said on the record that Dr. Katz "lied" or "committed perjury" more than 60 times. The Court further recognized that several trial courts in the Second Department had been presented with requests for new IMEs where Dr. Katz had originally been retained to perform them.

Travelers is allegedly Exam Works "most important and influential client," (Complaint at ¶ 134), and after the Bermejo mistrial, purportedly directed Exam Works to place Dr. Katz' name on the "Do Not Use" list. The Plaintiffs allege that "[t]he [D]efendants, jointly and severally, devised a plan and scheme to ruthlessly and aggressively disseminate throughout the negligence defense industry, the false and irresponsible allegations and accusations leveled against Dr. Katz by Justice Hart so that anyone and everyone in the industry knew that Dr. Katz was on the 'Do Not Use List.'" (*Id.* at ¶ 140). Dr. Katz was not placed back on the "Do Not Use" list after the Second Department decision.

All but a "couple" of Dr. Katz' hundreds of scheduled IMEs were canceled, resulting in purported losses of in excess of $1.5 million. "Virtually all" of the insurance carriers terminated or suspended their contracts with the Plaintiffs.

**B.  Relevant Procedural History**

On June 22, 2016, the Plaintiffs filed a complaint in New York State Supreme Court, Nassau County alleging three New York common law causes of action against both Defendants:

6

tortious interference with a contract; tortious interference with business advantage; and *prima facie* tort. The complaint also alleged that Travelers breached a contract with the Plaintiffs.

On August 5, 2016, Travelers removed the case to the EDNY based on diversity of the parties pursuant to 28 U.S.C. § 1332(a)(1).

On August 12, 2016, Exam Works filed a motion to dismiss for a failure to state a claim pursuant to Rule 12(b)(6). Exam Works attached an affidavit to its motion, refuting many of the assertions made in the Plaintiffs' complaint. On August 19, 2016, Travelers filed its motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6). Travelers submitted court papers from a purportedly related case along with its motion. The related case was also filed in New York State Supreme Court, New York County, and the allegations in that complaint stem from the incidents that took place during the *Bermejo* trial and its aftermath.

## II. DISCUSSION

### A. The Standard of Review

In reviewing a motion to dismiss pursuant to Rule 12(b)(6), the Court must accept the factual allegations set forth in the complaint as true and draw all reasonable inferences in favor of the Plaintiff. *See Walker v. Schult*, 717 F.3d 119, 124 (2d Cir. 2013); *Cleveland v. Caplaw Enters.*, 448 F.3d 518, 521 (2d Cir. 2006); *Bold Electric, Inc. v. City of N.Y.*, 53 F.3d 465, 469 (2d Cir. 1995); *Reed v. Garden City Union Free School Dist.*, 987 F. Supp. 2d 260, 263 (E.D.N.Y. 2013).

Under the now well-established *Twombly* standard, a complaint should be dismissed only if it does not contain enough allegations of fact to state a claim for relief that is "plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 1974, 167 L. Ed. 2d 929

(2007). The Second Circuit has explained that, after *Twombly,* the Court's inquiry under Rule 12(b)(6) is guided by two principles:

> First, although a court must accept as true all of the allegations contained in a complaint, that tenet is inapplicable to legal conclusions, and [t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. Second, only a complaint that states a plausible claim for relief survives a motion to dismiss and [d]etermining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.

*Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 664, 129 S. Ct. 1937, 1940, 173 L. Ed. 2d 868 (2009)).

Thus, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and . . . determine whether they plausibly give rise to an entitlement of relief." *Iqbal*, 556 U.S. at 679.

## B. Applicable Legal Principles

### 1. Tortious Interference with a Contract

To plead a claim of tortious interference with a contract under New York law, a plaintiff must allege "(1) the existence of a valid contract between a third party and plaintiff, (2) that defendant had knowledge of that contract, (3) that defendant intentionally procured a breach, and (4) damages." *Finley v. Giacobbe,* 79 F.3d 1285, 1294 (2d Cir. 1996); *see also Israel v. Wood Dolson Co.,* 1 N.Y.2d 116, 151 N.Y.S.2d 1, 134 N.E.2d 97, 99 (N.Y. 1956).

### 2. Tortious Interference with Business Advantage

"Tortious interference with a business relationship is sometimes called 'tortious interference with prospective economic advantage'; no matter the term used, the elements are the same. *RFP LLC v. SCVNGR, Inc.*, 788 F. Supp. 2d 191, 196 (S.D.N.Y. 2011) (quoting *PPX Enters.*

*v. Audiofidelity Enters.,* 818 F.2d 266, 269 (2d Cir. 1987), *abrogated on other grounds by Hannex Corp. v. GMI, Inc.,* 140 F.3d 194, 206 (2d Cir. 1998)).

The elements of tortious interference with a business relationship are "(1) the plaintiff had business relations with a third party; (2) the defendant interfered with those business relations; (3) the defendant acted for a wrongful purpose or used dishonest, unfair, or improper means; and (4) the defendant's acts injured the relationship." *Catskill Dev., L.L.C. v. Park Place Entm't Corp.,* 547 F.3d 115, 132 (2d Cir. 2008) (citation omitted).

### 3. *Prima facie* Tort

The four elements for a *prima facie* tort in New York State are: (1) intentional infliction of harm, (2) causing special damages, (3) without excuse or justification, and (4) by an act or series of acts that would otherwise be lawful. *Restis v. Am. Coal. Against Nuclear Iran, Inc.,* 53 F. Supp. 3d 705, 730 (S.D.N.Y. 2014) (citing *Ross v. Mitsui Fudosan, Inc.,* 2 F. Supp. 2d 522, 531 (S.D.N.Y. 1998) (citing *Curiano v. Suozzi,* 63 N.Y.2d 113, 480 N.Y.S.2d 466, 469, 469 N.E.2d 1324 (N.Y. 1984))).

"The first element requires 'disinterested malevolence,' which means that 'the plaintiff cannot recover unless the defendant's conduct was not only harmful, but done with the sole intent to harm.'" *Hall v. City of White Plains,* 185 F. Supp. 2d 293, 304 (S.D.N.Y. 2002) (quoting *Twin Labs., Inc. v. Weider Health & Fitness,* 900 F.2d 566, 571 (2d Cir. 1990)). Accordingly, "motives other than disinterested malevolence, 'such as profit, self-interest, or business advantage' will defeat a *prima facie* tort claim." *Twin Labs.,* 900 F.2d at 571 (internal citations omitted).

*Prima facie* tort is a highly disfavored cause of action in New York. *Restis,* 53 F. Supp. 3d at 730 n.15 ("The Court notes that *prima facie* tort is a "highly disfavored" cause of action in New York."); *Hall v. City of White Plains,* 185 F. Supp. 2d 293, 304 (S.D.N.Y. 2002) (same); *Nevin v.*

9

*Citibank, N.A.,* 107 F. Supp. 2d 333, 347 (S.D.N.Y. 2000) (stating that *prima facie* tort is "highly disfavored in New York" and that "it is well settled that any claim covered by a traditional tort claim cannot be the basis of a *prima facie* tort—even if the traditional tort claim turns out not to be viable").

### 4. Breach of Contract

Under New York law, there are four elements to a breach of contract claim: "(1) the existence of an agreement, (2) adequate performance of the contract by the plaintiff, (3) breach of contract by the defendant, and (4) damages." *Harsco Corp. v. Segui,* 91 F.3d 337, 348 (2d Cir. 1996).

## C. Application to the Facts of This Case

### 1. As to the Defendants' Affidavits and Exhibits

As stated above, the Defendants attached affidavits to their memoranda in which they refuted several assertions made by the Plaintiffs. Travelers also included court papers from an allegedly related case.

"When determining the sufficiency of plaintiff['s] claim for Rule 12(b)(6) purposes, consideration is limited to the factual allegations in [the] complaint, documents attached to the complaint as an exhibit or incorporated in it by reference, matters of which judicial notice may be taken, or documents either in plaintiff['s] possession or of which plaintiff[ ] had knowledge and relied in bringing suit." *Brass v. Am. Film Techs., Inc.,* 987 F.2d 142, 150 (2d Cir. 1993). Therefore, when a plaintiff chooses not to attach to the complaint or incorporate by reference a document upon which it solely relies and which is integral to the complaint, the court may nevertheless take that document into consideration in deciding a defendant's motion to dismiss,

10

without converting the motion into one for summary judgment. *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 47–48 (2d Cir. 1991).

However, when a party submits additional evidence to the Court in connection with a motion to dismiss, beyond the scope of those allowed under *Brass* and *Cortec*, "a district court must either 'exclude the additional material and decide the motion on the complaint alone' or 'convert the motion to one for summary judgment under Fed. R .Civ. P. 56 and afford all parties the opportunity to present supporting material.'" *Friedl v. City of New York*, 210 F.3d 79, 83 (2d Cir. 2000) (quoting *Fonte v. Bd. of Managers of Cont'l Towers Condo.*, 848 F.2d 24, 25 (2d Cir. 1988)); *see also* Fed. R. Civ. P. 12(b); 5C Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1366.

Therefore, the Court will not consider the Defendants' affidavits to the extent they purport to allege facts outside of those included in the complaint. The Court takes judicial notice of the court papers from the allegedly related case, as it stems from the same facts as those alleged here. However, the filings in the related case did not bear on the Court's decision.

**2. As to Whether the Plaintiffs' Tort claims Are Truly Disguised Defamation Claims**

Both Defendants argue that the Plaintiffs tort claims are actually defamation claims, and that they are therefore time-barred by the statute of limitations. *See* N.Y. C.P.L.R. 215-4 (stating that actions to recover damages for libel, slander, false words causing special damages, *inter alia*, shall be commenced within one year). The Plaintiffs argue in opposition that defamation can be a predicate for claims such as tortious interference with a contract or business relationship.

A claim for defamation under New York requires a plaintiff to allege 1) the making of a false defamatory statement of fact; 2) that the statement was published to a third party; 3) that the statement concerned the plaintiff; 4) that the defendant was responsible for making the statement;

11

and 5) that the statement was *per se* defamatory, or caused special damages. *Albert v. Loksen,* 239 F.3d 256, 265–66 (2d Cir. 2001); *Lader v. Delgado,* 941 F. Supp. 2d 267, 271 (E.D.N.Y. 2013).

The Defendants cite to *Lader* in support of their argument. In *Lader,* the plaintiffs did not label any of their causes of action; they only laid out the facts. 941 F. Supp. at 271. The Court interpreted the facts to allege causes of action for defamation, and tortious interference with business relationships. *Id.* Similar to the present case, the defendants in *Lader* asked the Court to dismiss the complaint because any and all claims brought by the plaintiffs were actually defamation claims, and were brought beyond the one-year statute of limitations. The Court agreed, saying:

> The court agrees that despite Plaintiffs' attempt to cast it differently, the complaint sets forth no more than a claim for defamation. Plaintiffs' complaint seeks compensation for damage to their business reputations as a result of statements made by Defendant in the initial complaint in the 2009 Action. Thus, the complaint refers specifically to allegedly false information stated in that complaint. Referring to those statements, Plaintiffs state that the "fallout" from such false statements "had a devastating blow to Lader's business." Further, Plaintiffs refer to "the damages to their reputations wrought by the scurrilous accusations [of Defendant]." Such statements, however characterized . . . state nothing more than a claim for defamation from statements made in the 2009 Action. As such, the claim is time-barred. *Accord Gallagher v. Metro North Commuter R. Co.,* 846 F. Supp. 291, 293–94 (S.D.N.Y. 1994) (when characterizing claim courts look to "the reality and the essence of the action and not its mere name"), quoting, *Ramsay v. Mary Imogene Bassett Hosp.,* 113 A.D.2d 149, 495 N.Y.S.2d 282, 284 (3d Dep't 1985) (dismissing claims in tort on ground that plaintiff's claim was, in fact, a claim only for defamation).

*Id.* at 273. The situation here is similar. The Plaintiffs' tortious interference with a contract claim states that the Defendants "transmitted and disseminated throughout the entire negligence defense industry, the . . . accusations made by Justice Hart," (Complaint at ¶ 155), and "as a direct consequence of the false and misleading statements made by defendants . . . Dr. Katz has been unable to work as an expert witness . . . ." (*Id.* at 163). The same actions are incorporated into the tortious interference with business advantage and *prima facie* tort claims by reference.

On this issue, the Second Circuit has said, "New York law considers claims sounding in tort to be defamation claims where those causes of action seek damages only for injury to reputation, or where the entire injury complained of by plaintiff flows from the effect on his reputation." *Hengjun Chao v. Mount Sinai Hosp.*, 476 F. App'x 892, 895 (2d Cir. 2012) (quoting *Jain v. Sec. Indus. and Fin. Mkts. Ass'n.*, No. 08 Civ. 6463, 2009 WL 3166684, at *9 (S.D.N.Y. Sept. 28, 2009) (internal quotation marks and alterations omitted)); *see also Lines v. Cablevision Systems Corp.*, 2005 WL 2305010, *5 (E.D.N.Y. Sep. 21, 2005) ("[T]his case sounds in defamation and Plaintiff may not avoid the obstacles in bringing that claim by stating a purported general tort."); *see also Riddell Sports Inc. v. Brooks,* 872 F. Supp. 73, (S.D.N.Y. 2005) (applying defamation's one-year statute of limitations where "the gravamen of counterplaintiffs' allegations . . . is purported injury to reputation" because the "injury complained of by counterplaintiffs . . . flows from the professed effect that counterdefendants' actions had on counterplaintiffs' reputation"); *Goldberg v. Sitomer, Sitomer & Porges,* 469 N.Y.S.2d 81, 82 (N.Y. App. Div. 1983) (finding that "claims in the complaint in reality are claims for defamation" as "the entire injury complained of by plaintiff flows from the effect on his reputation"), *aff'd,* 63 N.Y.2d 831 (N.Y. 1984); *Noel v. Interboro Mut. Indem. Ins. Co.,* 295 N.Y.S.2d 399, 400 (N.Y. App. Div. 1968) (finding that despite the name plaintiff gave the cause of action, allegations that "defendants willfully and maliciously issued, published and widely circulated a bulletin designed intentionally to discredit and harm the plaintiff" pleaded an action for defamation), *aff'd,* 29 N.Y.2d 743 (N.Y. 1971).

Here, "the gravamen of Plaintiff's alleged injury in each of the [] counts is either harm to [his] reputation or harm that flows from the alleged effect on Plaintiff's reputation, such as," *Jain,* 2009 WL 3166684 at * 9, loss of contracts and business relationships. Because the Defendants

allegedly harmed the Plaintiffs reputation by disseminating Justice Hart's accusations, the Plaintiffs lost business contacts as well as contracts.  Therefore, the Plaintiff's claims sounding in tort are in truth defamation claims.  Accordingly, these claims were brought after the one-year statute of limitations set forth in N.Y. C.P.L.R. 215-4 and are dismissed as time-barred.

Nevertheless, the Court will also address how each of the Plaintiffs' claims fail because they are unable to withstand scrutiny under Rule 12(b)(6).

### 3. As to the Plaintiffs' Tortious Interference with a Contract and Business Advantage Claims

The Defendants argue that the Plaintiffs has failed to plead the elements of the two causes of action with specificity.  Namely, they assert that the Plaintiffs do not point to a single third party with whom the Plaintiffs previously had a contract or a business; that the Plaintiffs did not allege that the Defendants acted for a wrongful purpose or used dishonest, unfair, or improper means; or that they intentionally procured a breach.  The Court agrees.

The Plaintiffs' complaint merely states that "insurance carriers and third party independent medical companies [] terminated and/or suspended their contractual relationships with Plaintiffs based on the false and misleading statements made by the [D]efendants."  (Complaint at ¶ 161).  The complaint makes similar general references to business relationships with insurance carriers and medical companies.  (Id. at ¶¶170–74).  The Plaintiffs do not provide any case law to support the proposition that, stating in a conclusory fashion that the Plaintiffs lost contract and business relationships, without citing to specific instances, is sufficient.  Rather, the case law is clear that the Plaintiffs have not sufficiently plead these two causes of action.

Failure to identify specific business entities with which the Plaintiffs had business relationships is fatal to their tortious interference with business advantage claims. *See Plasticware, LLC v. Flint Hills Res., LP*, 852 F. Supp. 2d 398, 402 (S.D.N.Y. 2012) ("Plaintiff has not

adequately alleged *specific* business relationships with which Defendant allegedly interfered.") (emphasis in original); *Bayer Schera Pharma AG v. Sandoz, Inc.*, No. 08 CIV.03710(PGG), 2010 WL 1222012, at *8 (S.D.N.Y. Mar. 29, 2010) (dismissing the plaintiff's tortious interference claim because it "ha[d] not identified any specific business entity with which it had business relationships"); *AIM Int'l Trading, L.L.C. v. Valcucine S.p.A., IBI, L.L.C.,* No. 02–CV–1363, 2003 WL 21203503, at *6 (S.D.N.Y. May 22, 2003) (noting that "[a] properly pleaded complaint . . . must allege relationships with specific third parties with which the respondent interfered" (emphasis added)); *Four Finger Art Factory, Inc. v. Dinicola,* No. 99–CV–1259, 2000 WL 145466, at *7 (S.D.N.Y. Feb. 9, 2000) (dismissing tortious interference with business relations claim where "the complaint fail [ed] to identify  any other relationships with any other specific parties with which the defendants interfered"); *Envirosource, Inc. v. Horsehead Res. Dev. Co.,* No. 95–CV–5106, 1996 WL 363091, at *14 (S.D.N.Y. July 1, 1996) (noting that "[a] general allegation of interference with customers without any sufficiently particular allegation of interference with a *specific contract or business relationship* will not withstand a motion to dismiss" (emphasis in original) (internal quotation marks omitted)).  Therefore, the Plaintiffs have not alleged sufficient facts that plausibly suggest that the Defendants tortiously interfered with any business advantages.

Similarly, failure to identify specific entities with which the Plaintiffs had contracts is fatal to their tortious interference with a contract cause of action. *See Plasticware*, 852 F. Supp. at 404 ("Plaintiff has not plausibly alleged adequate details about a specific contract between itself and a third party, but merely has alleged that it has "agreements" with its customers. This is insufficient."); *Bose v. Interclick, Inc.,* No. 10–CV–9183, 2011 WL 4343517, at *10–11 (S.D.N.Y. Aug. 17, 2011) (dismissing a tortious interference with contract claim where plaintiff claimed that it had contracts with various parties, but did not give any "facts regarding the terms of the contracts

15

or the specific parties to the contracts"); *Ho Myung Moolsan Co. v. Manitou Mineral Water, Inc.,* 665 F. Supp. 2d 239, 255 (S.D.N.Y. 2009) (denying leave to amend tortious interference with contract claim that had been dismissed, because plaintiffs alleged only that "defendants interfered with their customer contracts," but did not "specify a single customer contract with which defendants interfered"); *Berman v. Sugo LLC,* 580 F. Supp. 2d 191, 208 (S.D.N.Y. 2008) (holding that claim for tortious interference with a contract failed to state grounds for relief because it "simply allege[d] that a contractual relationship existed between [the parties], but sets forth no facts to allege what kind of contract [they had], whether it was nonexclusive, and whether it was valid."). Therefore, the Plaintiffs have not alleged sufficient facts to allow this Court to plausibly find that the Defendants tortiously interfered with third-party contracts.

Accordingly, the Defendants' motion to dismiss the Plaintiffs' tortious interference with contracts and tortious interference with business advantages claims pursuant to Rule 12(b)(6) is granted.

### 4. As to the Plaintiffs' *Prima facie* Tort Claims

The Plaintiffs' *prima facie* tort claim against the Defendants fails for multiple reasons. First, the claim is time-barred by the statute of limitations. *Russek v. Dag Media Inc.,* 47 A.D.3d 457, 851 N.Y.S.2d 399, 400 (N.Y. App. Div. 2008) ("[A] cause of action for *prima facie* tort is governed by a one-year statute of limitations."). Second, New York courts and the Second Circuit have held that "where 'the factual allegations underlying the *prima facie* tort cause of action relate to the dissemination of allegedly defamatory materials,' that cause of action "must fail." *McKenzie v. Dow Jones & Co.,* 355 F. App'x 533, 536 (2d Cir. 2009) (summary order) quoting *Butler v. Delaware Otsego Corp.,* 203 A.D.2d 783, 610 N.Y.S.2d 664, 665 (N.Y. App. Div. 1994) (internal alterations omitted)); *see also Springer v. Viking Press,* 90 A.D.2d 315, 457 N.Y.S.2d 246, 248

16

(N.Y. App. Div. 1982) (in case involving allegedly libelous depiction of plaintiff in novel, there was "no warrant for the invocation of the *prima facie* tort doctrine" where plaintiff could not succeed "without, at the same time, establishing the classical tort of libel"). Third, the Plaintiffs failed to plead any "special damages." *See Bilinski v. Keith Haring Found., Inc.*, 96 F. Supp. 3d 35, 51 (S.D.N.Y.), *aff'd in part*, 632 F. App'x 637 (2d Cir. 2015) ("Pleading damages as a round number with no attempt at itemization alleges general rather than special damages." (citing *Drug Research Corp. v. Curtis Pub. Co.*, 7 N.Y.2d 435, 441, 166 N.E.2d 319, 322 (N.Y. 1960)))

Therefore, the Plaintiffs' *prima facie* tort claim fails as a matter of law and the Defendants' motion to dismiss that claim pursuant to Rule 12(b)(6) is granted.

**5. As to the Plaintiffs' Breach of Contract Claim Against Travelers**

Travelers argues that the Plaintiffs failed to allege the existence of a valid contract between them. Here, the Court disagrees. The complaint states that on "[six dates] Dr. Katz was engaged by [] [] Travelers to conduct IME[s] [] and to testify . . . ." (Complaint at ¶ 187). The Court construes the complaint liberally means that the parties had a valid agreement whereby Dr. Katz would conduct IMEs and testify for Travelers, and that Travelers would, in turn, pay him. The complaint further states that the "fees generated for such services rendered and testimony given was $93,000[,] no part of which has been paid . . . ." (Id. at ¶ 188). Again construing the facts liberally in favor of the Plaintiffs, the Court interprets this to mean that Dr. Katz adequately performed under the contract by rendering such services; that Travelers breached the contract by not paying Dr. Katz; and that the Plaintiffs suffered damages as a result.

Although the Plaintiffs did not specify whether this was an oral or written contract, this is not fatal to their claim. *See, e.g., Wisdom Import Sales Co., LLC v. Labatt Brewing Co.*, 339 F.3d 101, 109 (2d Cir. 2003) ("[U]nder New York law, oral agreements are binding and enforceable

17

absent a clear expression of the parties' intent to be bound only by a writing." (citing *R.G. Group, Inc. v. Horn & Hardart Co.,* 751 F.2d 69, 74–75 (2d Cir. 1984))); *Advanced Marine Techs., Inc. v. Burnham Sec., Inc.,* 16 F. Supp. 2d 375, 380 (S.D.N.Y. 1998) ("When not barred by the statute of frauds, [oral contracts] are just as binding as written contracts."); *Charles Hyman, Inc. v. Olsen Indus., Inc.,* 227 A.D.2d 270, 642 N.Y.S.2d 306, 309 (N.Y. App. Div. 1996) (noting that an oral contract "is as enforceable as a written one").

Therefore, the Court finds that the Plaintiffs have alleged sufficient facts for a plausible breach of contract claim against Travelers. Accordingly, Travelers motion to dismiss that claim pursuant to Rule 12(b)(6) is denied.

### III. CONCLUSION

For the reasons stated above, the Court grants Exam Works' motion to dismiss pursuant to Rule 12(b)(6) in its entirety, and grants in part and denied in part the Defendant Travelers motion to dismiss pursuant to Rule 12(b)(6). Travelers' motion to dismiss is granted to the extent that the Plaintiffs' tortious interference with a contract claim; tortious interference with business advantage claim; and *prima facie* tort claim are dismissed. Travelers' motion to dismiss is denied to the extent that the Court finds that the Plaintiffs has alleged sufficient facts to plausibly state a claim for breach of contract.

Accordingly, all claims against Exam Works are dismissed and the Clerk of the Court is respectfully directed to remove Exam Works as a Defendant in this action. This case is respectfully referred to Magistrate Judge Steven I. Locke for the remainder of discovery.

It is **SO ORDERED:**

Dated: Central Islip, New York

March 10, 2017

___/s/ Arthur D. Spatt___

ARTHUR D. SPATT

United States District Judge