UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------X
MICHAEL J. KATZ, M.D. and MICHAEL
J. KATZ, M.D., P.C.,

                     Plaintiffs,

        -against-

TRAVELERS PROPERTY CASUALTY
COMPANY OF AMERICA, and its
relevant servants, agents or employees and
relevant associated, affiliated or subsidiary
corporations,

                     Defendant.
---------------------------------------------------------X

**MEMORANDUM OF DECISION & ORDER**
2:16-cv-04389 (ADS)(SIL)

**APPEARANCES:**

**Zisholtz & Zisholtz, LLP**
*Attorneys for the Plaintiffs*
170 Old Country Road Suite 300
Mineola, NY 11501
      By:    Gerald Zisholtz, Esq.,
               Stuart S. Zisholtz, Esq.,
               Meng Cheng, Esq., Of Counsel.

**DLA Piper US LLP**
*Attorneys for the Defendant*
6225 Smith Avenue
Baltimore, MD 21209
      By:    Brett Ingerman , Esq.,
               Michael Bakhama, Esq.,

1251 Avenue of The Americas 27th Floor
New York, NY 10020
      By:    Colleen Michelle Gulliver, Esq.,
               Michael George Lewis, Esq., Of Counsel.

**SPATT, District Judge**:

    Plaintiffs Michael J. Katz, M.D. and Michael J. Katz, M.D., P.C. (the "Plaintiffs" or "Dr.

Katz") bring this action against defendant Travelers Property Casualty Company of America

("Travelers" or the "Defendant") alleging breach of contract under New York State law pertaining to Travelers's retention of Dr. Katz to testify as an independent medical examiner in a personal injury case in the New York Supreme Court for the County of Queens, *Bermejo v. Amsterdam & 76th Associates, LLC, et al.*, No. 23985/2009 ("*Bermejo*"), on behalf of a Travelers policyholder.

Presently before the Court is a motion by the Defendant for summary judgment pursuant to Federal Rule of Civil Procedure ("Fed. R. Civ. P." or "Rule") 56. For the following reasons, the Court grants the Defendant's motion for summary judgment in its entirety.

## I. BACKGROUND

Dr. Katz is an orthopedist and former independent medical examiner. The Law Office of Andrea Sawyers (the "Law Office"), the members of which are employed by Travelers to represent the interests of its policyholders, engaged Dr. Katz to testify regarding the cause of the *Bermejo* plaintiff's injury. No written agreement existed between Dr. Katz and Travelers or the Law Office. The central issue is whether certain expenses incurred by Dr. Katz fell within the scope of an oral agreement between the parties.

It is undisputed that Dr. Katz performed two Independent Medical Examinations ("IMEs") of the plaintiff in the state court proceeding, Manuel Bermejo ("Bermejo"). It is also undisputed that Dr. Katz appeared in court on April 12, 2013 (hereinafter "April 12"), testified as agreed, and was paid fully by Travelers for the services he provided up to that date. However, the parties disagree regarding whether the contract required Travelers to pay Dr. Katz for expenses arising from a number of hearings held subsequent to his testimony on April 12, when the presiding judge, the late Justice Duane Hart ("Justice Hart"), accused Dr. Katz of perjury.

2

Dr. Katz alleges that he continued to assist in Travelers's defense of the *Bermejo* action at the request of Travelers's trial counsel, Michael T. Reilly ("Reilly"), and thus is entitled to payment at a daily rate of $14,000 pursuant to his agreement with Travelers. Travelers, on the other hand, contends that the parties' agreement only compensated Dr. Katz for his testimony, thereby excluding any appearances and expenses incurred after April 12, which occurred under the order of Justice Hart rather than at the request of Travelers.

## A. THE PROCEEDINGS BEFORE JUSTICE HART.

### 1. April 12–13, 2013.

During the April 12 hearing, on cross-examination, Bermejo's counsel, Patrick J. Hackett ("Hackett"), questioned Dr. Katz about the length of the second IME. Initially, Dr. Katz stated that he did not remember the length of the IME, nor could he provide an average amount of time that an exam of that nature takes based on his usual custom and practice. At the insistence of Justice Hart, Dr. Katz estimated that the average amount of time he spends on such an examination to be between ten and twenty minutes. Dr. Katz concluded his testimony that same day.

After Dr. Katz concluded his testimony and left the courtroom, Hackett called his paralegal (who had nodded her head in disagreement during Dr. Katz's testimony) to impeach Dr. Katz's testimony. Hackett revealed that his paralegal had secretly recorded a video of Dr. Katz's second IME of Bermejo. Justice Hart permitted Hackett to play this recording to the jury. Hackett contended that the recording proved that the examination lasted less than two minutes, and that this contradicted Dr. Katz's testimony that he typically takes ten-to-twenty minutes to conduct similar examinations.

On Saturday, April 13, 2013, Justice Hart left Michael T. Reilly ("Reilly"), Travelers's trial counsel, a voicemail and told him that he was troubled by Dr. Katz's testimony. In the voicemail, Justice Hart told Reilly that Dr. Katz must appear in court on Monday and that he should bring his own personal attorney. Reilly relayed this order to Dr. Katz by telephone.

2. **April 15, 2013.**

On Monday, April 15, 2013 (hereinafter "April 15"), Dr. Katz appeared in Court, as ordered. Justice Hart warned Dr. Katz that he was facing potential criminal charges:

> THE COURT: … Okay Doctor, I know you want to say something but I suggest you not say anything until you are dealing with an attorney. I would strongly suggest that you wait. You have an attorney coming in today?
>
> [DR. KATZ]: We're trying.
>
> THE COURT: I would strongly suggest you not do anything because you're in more trouble than you think. It's probably that your career doing IME's is over. … If I find out or if I even suspect something is going on I have a duty to get in touch with the district attorney and getting in touch with the district attorney is not a good thing for you in this case. Is that understood?
>
> [DR. KATZ]: Yes, sir.

ECF 57-5, *Bermejo* Apr. 15, 2013 Tr. 1058:5–21.

Almost immediately, Dr. Katz hired an attorney, David Vozza ("Vozza"), who appeared in court the same day to defend Dr. Katz. When Justice Hart asked Vozza if he would "let [his] client continue to offer testimony in this trial," Vozza responded "[a]bsolutely not, Judge." *Id.* at 1059:16–19. Justice Hart then considered declaring a mistrial, telling Reilly: "you still have this doctor who will now not testify. …" *Id.* at 1059:22–24.

Ultimately, however, Justice Hart did not declare a mistrial on April 15. Instead, he urged the parties to settle the case, in part "so that the defendant isn't put in a position where they have to go forward on the RSD case with no orthopedist …" *Id.* at 1063:22–1064:5. Justice Hart

4

warned the parties and counsel that "[i]f you can't work it out today I will declare a mistrial tomorrow and I will take the remedial actions I told you that I was taking." *Id.* at 1066:12–20.

When Vozza asked if Dr. Katz was required to appear on April 16, Justice Hart replied: "I would think you and the doctor would be the first ones to open up this building in the morning" and instructed Dr. Katz to cancel his calendar of patients. *Id.* at 1067:10–17. Elaborating, Justice Hart warned that "if I think there is a hint that [Dr. Katz] was lying I'm going to be the least of his problems. My friends in my former office in the district attorney they might have a conversation with you…" *Id.* at 1067:22–25.

   **3. April 16, 2013.**

On April 16, 2013 (hereinafter "April 16"), Dr. Katz again appeared in court, as ordered by Justice Hart. ECF 57-6, *Bermejo* Apr. 16, 2013 Tr. At his deposition in this case, Dr. Katz testified that no one from Travelers requested that he appear in court between April 15 and April 16. Katz Dep. 69:21- 70:2. Dr. Katz provided no testimony on either date. To the contrary, Dr. Katz testified that, by April 16, he was no longer receiving any instructions from Travelers:

> Q. After your attorney had said that he would absolutely not let you testify, what was the reason for coming to court the next day [i.e., on April 16]?
>
> A. It's apparent over here that Mr. Reilly needed his witness, but Mr. Reilly was no longer instructing me. I was being instructed by Mr. Vozza, and that was through Judge [sic] Hart. …

Katz Dep. 66:10–18.

On April 16, Justice Hart declared a mistrial. Justice Hart also scheduled sanctions and contempt hearings against plaintiff's counsel, for secretly recording the IME; the *Bermejo* defendants and Travelers, for hiring Dr. Katz; and against Dr. Katz himself, for allegedly committing perjury. He stated the purpose of the next hearing:

5

> I want, when you come back for trial, I want the memos of law to try and convince me first that I shouldn't have a sanctions hearing at all or in the alternative if I have the sanctions hearing why your particular client or law firm shouldn't be sanctioned for the cost of this trial.

*Bermejo* Apr. 16, 2013 Tr. 1074:22–1075:2.

On several dates throughout June and July, the court held hearings on a host of issues, including, *inter* alia, sanctions; the admissibility of the secret video recording of Dr. Katz's second IME; whether Dr. Katz committed perjury; and whether Reilly's client was entitled to engage a new expert in light of the unusual circumstances surrounding the impeachment of Dr. Katz's testimony.

### 4. June 12, 2013.

The first such hearing occurred on June 12, 2013 (hereinafter "June 12"). At his deposition, Dr. Katz testified that he did not appear in court or perform any work for Travelers on that date. *See* Katz Dep. 72:11–73:14. Instead, another one of Dr. Katz's personal lawyers, Sean Lenihan ("Lenihan"), entered his appearance to represent Dr. Katz's interests. In Lenihan's presence, Justice Hart declared that Dr. Katz "lied about a material fact" and that Dr. Katz's perjury was the cause of the mistrial. ECF 57-7, *Bermejo* June 12, 2013 Tr. 4:22–25. Justice Hart then expressed to the parties his displeasure regarding Dr. Katz's failure to appear. *Id.* at 5:7–12 ("And Dr. Katz, who basically in this matter could be called Typhoid Mary, because it's his lie that caused this mistrial and caused this problem, deciding he's got other things to do, which is not a great thing when I've got a sanctions hearing scheduled as against him in three weeks.").

At the hearing, Reilly reiterated his request to engage a new expert witness. He contended that the unusual and unanticipated circumstances leading to the mistrial, including the improper admission of the video recording of Dr. Katz's IME and the attempt to impeach Dr. Katz's testimony with the recording, justified this relief. Reilly emphasized that he could not and would

6

not engage Dr. Katz in any retrial under the circumstances: "The bottom line is this, Judge. I have now a physician which I stated on my papers and before your Honor now who will not come in." *Id.* at 9:12–14. Indeed, Reilly analogized the situation to Dr. Katz "being legally dead." *Id.* at 10:7–9.

While Dr. Katz was not present in court on June 12, he testified at his deposition in this case that he was well aware of Reilly's ongoing efforts to engage a new orthopedist and of his position that he could not engage Dr. Katz in any retrial under the circumstances. Katz Dep. 83:16–23. A substantial portion of the June 12 hearing consisted of a colloquy between Justice Hart and Dr. Katz's counsel regarding whether Dr. Katz committed perjury. Ultimately, Justice Hart ordered Dr. Katz to return to court for a sanctions hearings in July:

> THE COURT: I'm going to sign the order and we're going to resume this party July 1st … I suggest that Dr. Katz clear out his schedule.
>
> MR. LENIHAN: I'll do my best, your Honor.
>
> THE COURT: No, let's put it this way, he's ordered here.
>
> MR. LENIHAN: I'll advise him of such.

*Bermejo* June 12, 2013 Tr. 29:18–25. Later in the proceeding, Justice Hart repeated: "again, Dr. Katz better be here." *Id.* at 34:12.

### 5. July 2013.

Dr. Katz testified at his deposition that Travelers did not request his services at the July sanctions hearings:

> Q. On July the 1st did anyone at Travelers ask you to be in court that day?
>
> A. No.
> …
> Q. Did you appear in court on [July 2]?

> A. No.
>
> Q. And did anyone at Travelers tell you to be on call that day?
>
> A. No.
>
> Q. And July 8th … Did anyone at Travelers specifically ask you to be in court on that day?
>
> A. No.

Katz Dep. 85:24–86:5; 91:5–22.

At the July 2, 2013 (hereinafter "July 2") and July 8, 2013 (hereinafter "July 8") hearings, to which Dr. Katz made no appearances, Reilly reiterated his objection that he could not use Dr. Katz as an expert:

> MR. REILLY: … [Dr. Katz] won't come in voluntarily. I am not subpoenaing him. There is an adverse situation regarding that.
>
> THE COURT: It is not adverse. He lied. He lied. I would imagine to help either your case or his carrier. I don't know which one.
>
> MR. REILLY: It is adverse. I can't have the gentleman come in. Quite frankly under your Honor's holding, were I to subpoena him, I could be exposed to a problem and so could my firm and so could my client.

ECF 57-8, *Bermejo* July 8, 2013 Tr. 5:10–23. Justice Hart denied Reilly's motion, and Reilly appealed.

**B. THE APPEAL TO THE SECOND DEPARTMENT.**

On appeal, the Second Department reversed Justice Hart's decision to deny Reilly's request to engage a new expert, explaining:

> In the present case, unusual and unanticipated circumstances warranting a new IME abound. Foremost among them is Dr. Katz's unavailability to the appellants as a witness at a retrial, due to his refusal to appear voluntarily, which, in turn, resulted from the Supreme Court's repeated accusation that Dr. Katz "lied" or committed "perjury" at the first damages trial. These extraordinary circumstances were set in motion when the plaintiff's attorney chose to surreptitiously videotape

8

> Dr. Katz's second IME of the plaintiff, and chose to withhold that recording from defense counsel despite the requirements of CPLR 3101 (i).

*Bermejo v. New York City Health & Hosps. Corp.*, 135 A.D.3d 116, 142, 21 N.Y.S.3d 78 (2d Dep't 2015) (hereinafter, "*Bermejo II*").

The Second Department emphasized several highly "unusual and unanticipated circumstances" which justified the relief sought by Reilly, including: (1) Hackett's improper taking and revelation at trial of the secret recording, (2) Justice Hart's interference with the cross-examination of Dr. Katz, and his insistence that Dr. Katz change his testimony, (3) Justice Hart's accusations, "repeated more than 60 times on the record," that Dr. Katz "lied" or committed "perjury," and (4) Justice Hart's "repeated threats to refer Dr. Katz to the District Attorney's office with a recommendation that he be prosecuted for perjury, and the court's extraordinary efforts to end Dr. Katz's career…" *See id.* at 147–49. The Second Department observed that "[u]nder these conditions, it is not surprising that Dr. Katz refuses to testify voluntarily at a retrial." *Id.* at 149.

**C. DR. KATZ'S POST-*BERMEJO* DEMANDS.**

Dr. Katz agreed in his deposition that Travelers paid him in full for his testimony on April 12. Katz Dep. 6:16–24. Dr. Katz also testified that his normal practice was to send an invoice to a client within one month of his testimony. *Id.* at 36:18–24. However, over the course of several years, Dr. Katz submitted several invoices to Travelers demanding payment for alleged services rendered during the *Bermejo* trial:

On June 18, 2014 – more than a year after the *Bermejo* trial – Dr. Katz claimed that Travelers owed him $35,000, ostensibly for "additional days of testimony" on April 15, April 16, and July 1, 2013 (hereinafter "July 1").

9

Almost two years later, on February 26, 2016, Dr. Katz sent Travelers an invoice for $137,250, but clarified at his deposition that $53,000 of this amount represented fees he paid to his personal attorney to defend him against Justice Hart's accusations. *Id.* at 101:8–102:24. The February 2016 invoice ostensibly was for Dr. Katz's "appearances" on April 15, April 16, April 22, July 1, July 2, and July 8.

In his Complaint filed in June 2016, Dr. Katz claimed that Travelers owes him $93,000 for his appearances on April 12, April 15, April 16, June 12, July 1, and July 8.

## II. DISCUSSION

### A. THE LEGAL STANDARD.

Fed. R. Civ. P. 56(a) provides that a court may grant summary judgment when the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."

"A genuine issue of fact means that 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Wright v. Goord*, 554 F.3d 255, 266 (2d Cir. 2009) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). "Where the moving party demonstrates 'the absence of a genuine issue of material fact,' the opposing party must come forward with specific evidence demonstrating the existence of a genuine dispute of material fact." *Brown v. Eli Lilly & Co.*, 654 F.3d 347, 358 (2d Cir. 2011) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)). "The evidence of the party opposing summary judgment is 'to be believed, and all justifiable inferences are to be drawn in [that party's] favor.'" *Wright*, 554 F.3d at 266 (parenthetically quoting *Graham v. Henderson*, 89 F.3d 75, 79 (2d Cir. 1996)). However, to defeat a motion for summary judgment, the opposing party "must do more than simply show that there is some

metaphysical doubt as to the material facts, and may not rely on conclusory allegations or unsubstantiated speculation." *F.D.I.C. v. Great Am. Ins. Co.*, 607 F.3d 288, 292 (2d Cir. 2010).

"When no rational jury could find in favor of the nonmoving party because the evidence to support its case is so slight, there is no genuine issue of material fact and a grant of summary judgment is proper." *Gallo v. Prudential Residential Servs., Ltd. P'ship*, 22 F.3d 1219, 1224 (2d Cir. 1994).

### B. APPLICATION TO THE FACTS.

Under New York law, there are four elements in a breach of contract claim: "(1) the existence of an agreement, (2) adequate performance of the contract by the plaintiff, (3) breach of contract by the defendant, and (4) damages." *Harsco Corp. v. Segui*, 91 F.3d 337, 348 (2d Cir. 1996).

The parties agree that a contract between them existed for Dr. Katz to appear and testify at the *Bermejo* trial. However, Travelers contends that the agreement concluded upon the completion of Dr. Katz's testimony on April 12, meaning that it bore no obligation to further compensate Dr. Katz for his participation in the *Bermejo* proceedings after that date because no contract to that effect existed. The Court finds this to be an odd formulation of the dispute. Travelers puts forward no evidence regarding the scope of the parties' agreement, let alone evidence that the agreement terminated on April 12. Indeed, the only evidence outlining the nature of the arrangement cited by either party is Dr. Katz's interrogatory responses, which indicate that the "services" he provided "were testimony and immediate availability to testify" with the "terms" of "truthful non-contingent testimony." ECF 57-11 at 3. Dr. Katz is not claiming that a separate contract existed governing time spent post-April 12. Instead, he asserts that the parties' prior agreement, which indisputably existed, covered that time. Therefore, the

relevant dispute is not whether the parties agreed to a subsequent contract, but rather whether Dr. Katz provided "testimony and immediate availability to testify" on behalf of Travelers after April 12.

In the Court's view, the undisputed evidence overwhelmingly establishes not only that Dr. Katz did not testify, but also that he was unavailable to testify after the completion of his testimony on April 12. All of the subsequent proceedings occurred at the order of Justice Hart in connection with the allegation that Dr. Katz falsified testimony. To the extent that Dr. Katz appeared, it was to defend against those charges in his personal capacity, not to provide "truthful non-contingent testimony" on Travelers's behalf.

On April 15, Dr. Katz appeared pursuant to instructions from Justice Hart. At the proceeding, Justice Hart further instructed Dr. Katz not to say anything until dealing with an attorney. Once Dr. Katz's attorney appeared, he informed Justice Hart that he would not permit Dr. Katz to continue to offer testimony in the trial. Thus, it is apparent that Dr. Katz's appearance on this day solely pertained to Justice Hart's accusation that Dr. Katz lied about a material fact, not to provide testimony.

On April 16, Dr. Katz appeared pursuant to an order by Justice Hart at the end of the previous day's proceedings. Dr. Katz provided no testimony at that time. At his deposition in this case, he testified that no one at Travelers requested that he appear either that day or the previous day, and that he was receiving his instructions from the judge through his personal attorney.

After declaring a mistrial, Justice Hart scheduled sanctions and contempt hearings on various dates in June and July. The record reveals that Dr. Katz neither appeared on Travelers's behalf nor performed work at Travelers's request at these hearings. On June 12, he did not appear or perform work for Travelers on that date. Dr. Katz appeared on July 1, but testified at

his deposition in this case that he did so at the order of Justice Hart and Travelers did not request his services. And on July 2 and July 8, Dr. Katz made no appearances and further testified that no one at Travelers asked him to be in court or on call on those days.

During these hearings, Travelers consistently and unequivocally took the position before Justice Hart that it could not and would not call on Dr. Katz as a witness in any continued *Bermejo* trial. At the hearings on June 12 and July 8, Travelers's trial counsel sought leave to engage a new expert witness due to Dr. Katz's unwillingness to appear voluntarily. Although Justice Hart denied this request, the Second Department reversed Justice Hart's decision, explaining on appeal that Dr. Katz was "unavailab[le] . . . due to his refusal to appear voluntarily." *Bermejo II*, 135 A.D.3d at 142. The Second Department further opined regarding Dr. Katz's evident unwillingness to testify and its effect on Travelers:

> The appellants have been effectively deprived of their expert orthopedic witness in the event of a retrial. Indeed, the Supreme Court's conduct toward Dr. Katz was so thoroughly intimidating, and the manner in which the video recording was made, concealed, and then revealed to the jury had such a chilling effect, that regardless of any corrective measures that might be taken at a retrial, it is likely that Dr. Katz will remain unwilling to testify. Neither the appellants nor their counsel are in any way responsible for the occurrence of these events, which could not possibly have been anticipated.

*Id.* at 149–50.

The aforementioned evidence clearly demonstrates that Dr. Katz performed no services that would require or justify Travelers compensating him after April 12. Dr. Katz provided no truthful non-contingent testimony after that date and it was apparent that Dr. Katz was wholly unwilling, and thus unavailable, to testify. This compels the conclusion that Dr. Katz's breach of contract claim fails as a matter of law, because Dr. Katz either (1) seeks compensation for expenses outside the scope of the parties' agreement or (2) himself breached the agreement for refusing to testify voluntarily. Either way, Travelers rightfully refused to pay him for those

13

expenses because Dr. Katz failed to establish the second (adequate performance by the plaintiff) and third (breach by the defendant) elements of a breach of contract action. *See Steven Strong Dev. Corp. v. Washington Med. Assocs.*, 303 A.D.2d 878, 880, 759 N.Y.S.2d 186, 189 (2003) (finding developer not entitled to payment of developer's fee where the evidence "overwhelmingly established that plaintiff never obtained construction financing, signed construction contracts, or began construction of any building and, consequently, that by 1995 plaintiff had not substantially completed its obligations outlined in the development agreement and which were a condition precedent to its entitlement to any developer fee"); *First Frontier Pro Rodeo Circuit Finals LLC v. PRCA First Frontier Circuit*, 291 A.D.2d 645, 646, 737 N.Y.S.2d 694, 695 (2002) ("In light of plaintiff's conceded nonperformance of its contract obligations and the absence of any factor excusing performance, Supreme Court properly granted summary judgment dismissing plaintiff's breach of contract cause of action.").

The evidence Dr. Katz puts forward to the contrary is self-serving and equivocal. He primarily relies on an affidavit submitted in conjunction with his opposition stating:

> 8. At the Traveler's request, I appeared in court and testified at Bermejo's trial on April 12, 2013, before the late Justice Duane Hart. However after my appearance on April 12, 2013, Michael Reilly, the counsel for Travelers defending in Bermejo matter, contacted me and asked me to appear in court on the following Monday, April 15, 2013. Subsequently, I appeared on April 15, 2013 and April 16, 2013 where Justice Hart embarked upon and inquired on the length of my IME conducted on Bermejo and repeatedly falsely accused me of lying under oath.
>
> 9. Thereafter, I spent whole days and cancelled all my work on April 22, 2013, June 22, 2013, July 1, 2013, July 2, 2013 and July 8, 2013 on Bermejo matter. In connection with Bermejo case to attempt to facilitate Traveler's defenses, I had countless conversation with my counsel, David Vozza who appeared in court on my behalf and had multiple discussions with Mr. Reilly on Bermejo matter. To the contrary of Travelers's assertion and in fact, on May 8, 2013, I informed Mr. Reilly and Travelers that I would be willing to testify at Bermejo's retrial if subpoenaed. (See Exhibit "B" a letter sent by Mr. Vozza on May 8, 2013).

> 10. More importantly, at no time was I ever terminated by Travelers. My services on Bermejo matter were continued on after I provided expert testimony on April 12, 2013.

ECF 60-1 ¶¶ 8–10. These statements directly contradict Dr. Katz's deposition testimony, which recounts that he gave no testimony on Travelers's behalf after April 12; that he appeared in Court at the direction of Justice Hart, not Reilly; and that he did not perform work for Travelers on the dates he listed. In the Second Circuit, "a party's affidavit which contradicts his own prior deposition testimony should be disregarded on a motion for summary judgment." *Mack v. United States*, 814 F.2d 120, 124 (2d Cir. 1987) (collecting cases); *Raskin v. Wyatt Co.*, 125 F.3d 55, 63 (2d Cir. 1997).

Even if the Court considered the allegations raised in Dr. Katz's affidavit, his claims are directly contradicted by the record in the *Bermejo* proceedings. The transcript of the hearings reveals no relevant testimony by Dr. Katz or his counsel in support of Travelers's defense post-April 12 and further shows that Travelers strenuously objected to continuing to engage Dr. Katz. Although courts are to normally avoid assessing the credibility of testimony on summary judgment motions, they need not adopt wholly self-serving testimony contradicted by the objective evidence in the case. *See Deebs v. Alston Transp., Inc.*, 346 F. App'x. 654, 656 (2d Cir. 2009) (stating that self-serving deposition testimony, by itself, "is insufficient to defeat summary judgment" when contradicted by "the hard evidence adduced during discovery"); *TufAmerica, Inc. v. Codigo Music LLC*, 162 F. Supp. 3d 295, 324 (S.D.N.Y. 2016) (plaintiff's "self[-]serving deposition testimony standing alone is ... not sufficient to create a triable issue of fact" to contradict documentary evidence). In other words, no reasonable juror could conclude that Dr. Katz in fact performed the post-trial work the affidavit claims he did.

The other evidence cited by Dr. Katz is equally un-compelling.

First, Dr. Katz cites his deposition testimony stating that Reilly called him and told him to appear in Court "in service of an obligation to Travelers" and supposedly directing him to be available to go back on the stand at a moment's notice. Katz Dep. at 16:22–17:25. In addition, Dr. Katz supposedly maintained his availability to help Travelers gain leverage when negotiating a settlement with Bermejo. *Id.* at 57:18–58:16. However, these assertions are belied by the actual record of the *Bermejo* proceedings showing he refused to voluntarily testify on behalf of Travelers and that Travelers was actively seeking to replace him. Unsurprisingly, the Second Department reviewed the same record and reiterated Dr. Katz's refusal to testify on several occasions. *See Bermejo II*, 135 A.D.3d at 119 ("[W]e find that the orthopedist was unwilling to testify voluntarily"), 142 (describing " Dr. Katz's unavailability to the appellants as a witness at a retrial, due to his refusal to appear voluntarily"), 149 ("Dr. Katz refuses to testify voluntarily at a retrial."), 150 ("[T]he present case primarily involves the unavailability of Dr. Katz, who has indicated that he will not voluntarily testify before the court at a retrial."), 151 ("Although Dr. Katz is physically available to testify, his unwillingness to testify voluntarily renders him effectively unavailable to the appellants.").

Second, Dr. Katz cites a May 3, 2013 letter from his attorney, Vozza, stating: "Please allow this letter to memorialize our clients' position regarding his future testimony at the retrial of the above-referenced matter. Be advised that, should he be subpoenaed to give testimony at a retrial, Dr. Katz intends to appear and comply." ECF 60-3. But this letter does not prove his willingness to assist Travelers. It shows the opposite—that he would only appear on behalf of Travelers pursuant to a writ commanding him to appear, subject to a penalty for failure to comply.

Third, Dr. Katz points to the invoices he sent Travelers, which are little more than *post hoc* attempts to demand payment. ECF 57-9; ECF 57-10; ECF 57-11. Dr. Katz submitted the invoices over the course of several years, contrary to his practice of sending an invoice to a client within one month of his testimony. The invoices claim that he gave testimony when in fact he gave none; and made appearances when in fact he made none. Moreover, they are internally inconsistent in that they all provide different dates upon which Dr. Katz supposedly gave testimony or made appearances. When asked about these inconsistencies in his deposition, Dr. Katz failed to provide a coherent explanation. *See* Katz Dep. 99:8–100:16. Therefore, the invoices are in no way a contemporaneous reflection of the dates Dr. Katz actually performed work.

For these reasons, Dr. Katz's claim that the parties operated under an implied-in-fact contract after April 12 similarly fails. "[A] contract implied in fact is one where the parties mutual intention to be bound is manifested not by words, but by actions or conduct." *Bd. of Ed., E. Meadow Union Free Sch. Dist. v. Bell*, 530 F. Supp. 1130, 1134 (E.D.N.Y. 1982). "[A]n implied in fact contract requires proof of the same elements to establish an express contract— mutuality of intent, offer and acceptance, lack of ambiguity, and consideration." *Patsy's Italian Rest., Inc. v. Banas*, 508 F. Supp. 2d 194, 218 (E.D.N.Y. 2007).

Here, Dr. Katz does not appear to be claiming that the parties agreed to a separate implied in fact contract entitling him to compensation under different terms than the original (*i.e.,* pre-April 12) agreement. Rather, he asserts that his supposedly "continued rendition of services" and Travelers's "[a]cceptance of those services . . . established[ed] a contract implied in fact with substantially the same terms and conditions as embodied in the prior contract." ECF 60-8 at 8; *see also id.* at 9 ("It was reasonable for Dr. Katz to believe that his services were continued and

were no different than the other services rendered with Travelers or with any other insurance companies where Dr. Katz was retained."). Because Dr. Katz's claims fail under the original agreement, they cannot establish breach of a subsequent agreement with identical terms, assuming one existed. *Cf. Twelve Sixty LLC v. Extreme Music Library Ltd., a division of Sony/ATV Music Publ'g*, No. 17-cv-1479, 2018 WL 369185, at *5 (S.D.N.Y. Jan. 9, 2018) ("Nevertheless, under New York law, a contract cannot be implied in fact where there is an express contract governing the subject matter involved."). What is more, Dr. Katz's refusal to voluntarily testify and Travelers's repudiation of his continued engagement defeat any potential assertion on his part that he continued providing services to Travelers and that Travelers accepted those services.

Therefore, the Court finds that no genuine dispute of material fact exists regarding the Plaintiffs' breach of contract claim and grants summary judgment in favor of Travelers dismissing the Complaint.

### III. CONCLUSION

For the foregoing reasons, the Court grants Travelers's motion for summary judgment in its entirety and dismisses the Complaint with prejudice. The Clerk of the Court is directed to enter judgment for Travelers and to close this case.

It is **SO ORDERED**:

Dated: Central Islip, New York
September 26, 2019

_/s/ Arthur D. Spatt_
ARTHUR D. SPATT
United States District Judge